FILED
2015 Feb-13  AM 10:17
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RODNEY V. BOWENS, BOBBIE BILLINGSLEY, CARL BILLINGSLEY, JOSEPH BROOKS, SR., ZONABIA M. BURNS, KELVIN DIAL, JAMES L. ECHOLS, JR., DORIS FOSTER, PHIL GENTRY, MICHAEL G. GROVE, ROBERT GLOVER, JR., CURTIS C. GRAVES, RAYFUS GRANT, TYMECCA LEE, TERRY NIXON, CARLOS SMITH, DORENE THORNTON, and CHRISTOPHER WHITTED, on behalf of themselves and the class they seek to represent, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | CV-2015-<br>CLASS ACTION<br>JURY DEMAND |
| MERCEDES-BENZ U.S. INTERNATIONAL, INC., | ) ) ) | |
| Defendant. | ) ) | |

# COMPLAINT - CLASS ACTION

## I.   *NATURE OF COMPLAINT*

This action is brought by Plaintiffs, Rodney V. Bowens, Bobbie Billingsley,

Carl Billingsley, Joseph Brooks, Sr., Zonabia M. Burns, Kelvin Dial, James L.

1

Echols, Jr., Doris Foster, Phil Gentry, Michael G. Grove, Robert Glover, Jr., Curtis C. Graves, Rayfus Grant, Tymecca Lee, Terry Nixon, Carlos Smith, Dorene Thornton and Christopher Whitted, African-Americans, current employees of Mercedes-Benz U.S. International, Inc. ("MBUSI" or "Defendant").  Plaintiffs bring claims on their own behalf and on behalf of a putative class against MBUSI regarding claims arising from the Vance, Alabama plant where they work.

1.     Plaintiffs seek a declaratory judgment that MBUSI have engaged in systemic pattern and practices of racial discrimination in employment opportunities at its Vance, Alabama plant and that such conduct is unlawful under two statutes: (a) Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. §§2000e, et seq., and (b) Section One of the Civil Rights Act of 1866, as amended in 1991, 42 U.S.C. §1981a. Plaintiffs also seek a permanent injunction and other equitable relief necessary to eliminate the effects of MBUSI's past and present racial discrimination and prevent such discrimination from continuing to adversely affect their life and career, including, but not limited to, affirmative restructuring of the selection procedures, training and other terms and conditions of employment, reimbursement of expenses incurred in prosecuting this action, and attorneys' fees. Plaintiffs further seek damages, back-pay and other equitable remedies necessary to make themselves and the members of the class which they seek to represent whole.

2

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343(4), and Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§2000e, *et seq.*, as amended.

## III.   CONDITIONS PRECEDENT TO SUIT UNDER TITLE VII

3.    Plaintiff, Rodney V. Bowens, has fulfilled all precedent conditions necessary to the institution of this action under Title VII.  Plaintiffs' claims arising under 42 U.S.C. §1981 do not require administrative exhaustion.

## IV.   PARTIES

### A.    DEFENDANT

4.    Defendant Mercedes-Benz U.S. International, Inc. ("MBUSI) is a corporation doing business in the State of Alabama.  MBUSI is an employer as defined by 42 U.S.C. §2000e(b).  It is also subject to suit under 42 U.S.C. §1981, as amended.  MBUSI maintains either actual or constructive control, oversight, or direction over the operation.

### B.    PLAINTIFFS

5.    Plaintiff, Rodney V. Bowens, is an African-American resident of the State of Alabama and a citizen of the United States.  Bowens is employed at MBUSI Vance, Alabama plant.

6.    Plaintiff, Bobbie Billingsley, is an African-American resident of the

3

State of Alabama and a citizen of the United States. B. Billingsley is employed at MBUSI Vance, Alabama plant.

7.     Plaintiff, Carl Billingsley, is an African-American resident of the State of Alabama and a citizen of the United States. C. Billingsley is employed at MBUSI Vance, Alabama plant.

8.     Plaintiff, Joseph Brooks, Sr., is an African-American resident of the State of Alabama and a citizen of the United States. Brooks is employed at MBUSI Vance, Alabama plant.

9.     Plaintiff, Zonabia A. Burns, is an African-American resident of the State of Alabama and a citizen of the United States. Burns is employed at MBUSI Vance, Alabama plant.

10.    Plaintiff, Kelvin Dial, is an African-American resident of the State of Alabama and a citizen of the United States. Dial is employed at MBUSI Vance, Alabama plant.

11.    Plaintiff, James L. Echols, Jr., is an African-American resident of the State of Alabama and a citizen of the United States. Echols is employed at MBUSI Vance, Alabama plant.

12.    Plaintiff, Doris Foster, is an African-American resident of the State of Alabama and a citizen of the United States. Foster is employed with MBUSI Vance,

4

Alabama plant.

13.     Plaintiff, Phil Gentry, is an African-American resident of the State of Alabama and a citizen of the United States.  Gentry is employed at MBUSI Vance, Alabama plant.

14.     Plaintiff, Michael G. Grove, is an African-American resident of the State of Alabama and a citizen of the United States.  Grove is employed at MBUSI Vance, Alabama plant.

15.     Plaintiff, Robert Glover, Jr., is an African-American resident of the State of Alabama and a citizen of the United States.  Glover is employed at MBUSI Vance, Alabama plant.

16.     Plaintiff, Curtis C. Graves, is an African-American resident of the State of Alabama and a citizen of the United States.  Graves is employed at MBUSI Vance, Alabama plant.

17.     Plaintiff, Rayfus Grant, is an African-American resident of the State of Alabama and a citizen of the United States.  Grant is employed at MBUSI Vance, Alabama plant.

18.     Plaintiff, Tymecca Lee, is an African-American resident of the State of Alabama and a citizen of the United States.  Lee is employed at MBUSI Vance, Alabama plant.

19. Plaintiff, Carlos Smith, is an African-American resident of the State of Alabama and a citizen of the United States. Smith is employed at MBUSI Vance, Alabama plant.

20. Plaintiff, Terry Nixon, is an African-American resident of the State of Alabama and a citizen of the United States. Nixon is employed at MBUSI Vance, Alabama plant.

21. Plaintiff, Dorene Thornton, is an African-American resident of the State of Alabama and a citizen of the United States. Thornton is employed at MBUSI Vance, Alabama plant.

22. Plaintiff, Christopher Whitted, is an African-American resident of the State of Alabama and a citizen of the United States. Whitted is employed at MBUSI Vance, Alabama plant.

## V.   *CLASS CERTIFICATION*

23. Racially discriminatory treatment is manifested by such policies and/or patterns or practices which deny African-American employees desirable job assignments, promotional opportunities, training, and other benefits and conditions of employment on the same terms applied to Caucasian employees. In particular, Defendant deters African-American employees from seeking promotions and desirable job/work assignments; fails to posts available positions/promotional

opportunities;[1] fails to select and/or train African-Americans for desirable job assignments; and fails to enforce policies prohibiting racial discrimination.

24.     This action, in part, seeks to enjoin Defendant from pursuing specific policies and/or practices that have injured and continue to injure plaintiffs and other African-American employees for employment opportunities in all aspects of Defendant's employment operations.  Defendant has created and maintained a system-wide employment policy of race-based disparate treatment and impact, which limits the employment opportunities for African-Americans in various aspects of defendant's employment operation including, but not limited to job selections, promotions, training and other terms and conditions of employment.

25.     The Plaintiffs seek certification of a class of African-Americans adversely affected by the employment practices at the MBUSI Vance, Alabama plant.

## VI.   COUNT ONE - CLAIMS AGAINST MBUSI

### A.   *CLASS DEFINITION AND COMMON QUESTIONS OF LAW AND FACT*

26.     The African-American Plaintiffs bring claim on their own behalf and on behalf of a class against MBUSI.  That class consists of African-Americans who have been subject to one or more aspects of the systemic racial discrimination described

---

[1]After Frankie Butler's EEOC Charge of Discrimination was filed on April 23, 2013, the defendant began posting some, but not all, vacant positions within the Plant.

in the class claims of this Complaint which include 1) MBUSI's selection procedures and compensation, and 2) unequal terms and conditions of employment. The prosecution of the claims of the plaintiffs requires adjudication of the question common to the putative class: whether the Defendant MBUSI has engaged in systemic racial discrimination in its selection and compensation practices and the terms and conditions of work and employment in a manner made unlawful by the statutes under which this action is brought.

27.    The claims of the plaintiffs are embedded in common questions of law and fact because defendant MBUSI has: 1) prevented African-Americans from learning about and/or competing for opportunities in jobs traditionally held by Caucasian employees; 2) precluded and/or delayed their hiring and promotion into such jobs; and 3) subjected African-American employees to adverse terms and conditions of employment, including but not limited to less pay and benefits if not selected for promotions.

## B.    TYPICALITY OF RELIEF SOUGHT

28.    The relief necessary to remedy the claims of the plaintiffs is the same as that necessary for the class. Such plaintiffs seek the following relief for their individual claims and those of the class: 1) a declaratory judgment that the defendant MBUSI has engaged in systemic racial discrimination in limiting the employment

8

opportunities of African-Americans to lower classifications; 2) a permanent injunction against such continuing discrimination; 3) restructuring of said defendant's selection procedures so that African-Americans are able to learn about and fairly compete in the future for better classifications, compensation levels, and terms and conditions of employment traditionally enjoyed by Caucasian employees; 4) restructuring of said defendant's workforce so that African-Americans are assigned to the classifications, locations and compensation levels they would have now hold in the absence of the defendant MBUSI's past racial discrimination; and 5) damages, back-pay and other equitable remedies necessary to make the African-American named plaintiffs and the class they seek to represent whole from defendant MBUSI's past discrimination.

### C.   NUMEROSITY AND IMPRACTICABILITY OF JOINDER

29.    The persons whom the plaintiffs seek to represent are too numerous to make joinder practicable.  The proposed class consists of between fifty and one hundred former, current, and future African-American employees who have been, are, or will be employed at the MBUSI Vance, Alabama plant.  Defendant MBUSI's and/or its pattern and practice of racial discrimination also makes joinder impracticable by discouraging African-Americans from applying or pursuing employment opportunities, thereby making it impractical and inefficient to identify

9

many members of the class prior to determination of the merits of such defendant's class-wide liability.

### D.   ADEQUACY OF REPRESENTATION

30.    The plaintiffs' interests are coextensive with those of the class in that each seek to remedy MBUSI's discriminatory employment practices so that African-Americans will no longer be segregated in unequal positions and prevented from obtaining management and other more desirable positions. The named plaintiffs are able and willing to represent the class fairly and vigorously, as they pursue their common goals through this action. Plaintiffs' counsel are also qualified, experienced, and able to conduct the litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interest, experience and resources of the Plaintiffs and their counsel to litigate competently the individual and class claims of race-based employment discrimination at issue, satisfy the adequacy of representation requirement of Federal Rule of Civil Procedure 23(a)(4).

### E.   EFFICIENCY OF CLASS PROSECUTION OF COMMON CLAIMS

31.    Certification of a class of similarly situated African-Americans is the most efficient and economical means of resolving the questions of law and fact that are common to the individual claims of the  named plaintiffs and the putative class

they seek to represent.  The individual claims of the named plaintiffs require resolution of the common question of whether MBUSI has engaged in a systemic pattern of racial discrimination against African-Americans.  Such plaintiffs seek remedies to undo the adverse effects of such discrimination in their own life, career and working conditions and to prevent continued racial discrimination in the future. The plaintiffs have standing to seek such relief, in part, because of the adverse effect that racial discrimination against African-Americans has had on their own interests in working and living in conditions free from the pernicious effects of racial bias and hostility.  In order to gain such relief for themselves, as well as for the putative class members, the named plaintiffs must first establish the existence of systemic racial discrimination as the premise of the relief they seek.  Without class certification, the same evidence and issues would be subject to repeated re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.  Certification of the class of African-Americans affected by the common question of law and fact is the most efficient and judicious means of presenting the evidence and argument necessary to resolve such questions for the named plaintiffs, the putative class and the defendant.  Such plaintiffs' individual and class claims are premised upon the traditional bifurcated method of proof and trial for disparate impact and systemic disparate treatment claims of the type at issue in this

11

Complaint. A bifurcated method of proof and trial is the most efficient method of resolving such common issues.

## F.    CERTIFICATION IS SOUGHT PURSUANT TO FED.R.CIV.P. 23(b)

32.    MBUSI has acted on grounds generally applicable to the class by adopting and following systemic practices and procedures which are racially discriminatory.

33.    MBUSI's racial discrimination is its standard operating procedure rather than a sporadic occurrence. The defendant has refused to act on grounds generally applicable to the class by refusing to adopt or follow selection procedures which do not have disparate impact or otherwise do not systemically discriminate against African-Americans. Its systemic discrimination and refusal to act on grounds that are not racially discriminatory have made appropriate final injunctive relief and corresponding declaratory relief with respect to the putative class as a whole.

34.    Injunctive and declaratory relief are the predominant relief sought because they are both the culmination of the proof of each defendant's individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the named plaintiffs' and putative class members' entitlement to equitable remedies and legal relief at Stage II of such trial. Declaratory and injunctive relief flow directly and automatically from proof of the common question

of law and fact regarding the existence of systemic racial discrimination against African-Americans. Such relief is the factual and legal predicate for the named plaintiffs' and putative class members' entitlement to equitable remedies for individual losses caused by such systemic discrimination.

## G. *FACTS SUPPORTING ALLEGATIONS OF SYSTEMIC RACIAL DISCRIMINATION*

### **RODNEY V. BOWENS**

35.    Plaintiff Rodney V. Bowens was hired by the defendant on July 7, 1997 as a Production Team Member. Plaintiff Bowens is currently working as a Quality Body and Paint Inspector. During his employment, Bowens has performed his duties and fulfilled his responsibilities in a satisfactory manner. Bowens has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, Bowens has suffered extreme harm.

36.    Plaintiff Bowens has been denied promotions to Team Leader in Quality Body & Paint on numerous occasions. Some, but not all, promotional opportunities are posted at the Plant.

37.     In January 2013, Bowens applied for the position of Quality Specialist I. This position is a salaried position and an office job. The job required one year of quality experience and Bowens had ten years of said experience. However, the plaintiff was not awarded the position and was interested in said position. The individual awarded the position was a female, Tia Brown, African-American, who only had three years experience in the Quality Department. On information and belief, Plaintiff Bowens believes the defendant placed an African-American in this position because of prior EEOC charges and complaints of race discrimination.

38.     In March 2013, Bowens applied for the position of Quality Special Entry Level position. The job required one year of quality experience and Bowens had ten years of said experience. Plaintiff was interviewed for the position; however, was not awarded the position. Plaintiff is unsure who was awarded said position.

39.     In October 2013, Bowens applied for Team Leader Quality and Paint. The job required experience in paint and body which the plaintiff had ten years of said experience. Plaintiff was not awarded the position. The position was awarded to a Caucasian female, Sherry Wilson, who the plaintiff had trained. Bowens also believes that this person was pre-selected for the position over the plaintiff because she was assigned, for approximately 30 days, to the acting position of "Team Leader" in Quality Body & Paint prior to being promoted.

14

40.    Promotion decisions/selections are/were made by Group Leader, Phillip Cooper; Woody Krueger; and Assistant Manager, Wade Smith, all Caucasians.

41.    In the Quality Body & Paint Department, a Caucasian female, Sherry Wilson, with only three years in the department, was sent to train in computer courses during working hours on three different occasions (dates uncertain) by Caucasian Group Leader, Phillip Cooper; and Caucasian Assistant Manager Wade Smith. Ms. Wilson was sent to said training ahead of all African-Americans with more seniority than her and said African-Americans still have not had the computer training.

42.    In the Quality Body & Paint Department, a Caucasian male, Jason Patton, who is next to the bottom in seniority out of 23 team members (with the top 2 individuals being African-Americans with eleven or more years of seniority) has been on a special quality assignment for the last two years.  This special quality assignment affords Jason Patton to work all day shifts and no rotation on other stations.  No African-Americans in the department have been afforded this special assignment.  The assignment was given to the Caucasian male by Group Leader, Phillip Cooper, and Wade Smith, both Caucasians. The African-American employees in the department are continually told the special assignment will be coming up for bid; however, it has been two years and there has been no posting of said assignment. At the end of 2014, when Plaintiff Bowens was inquiring about the special

15

assignment again, he was told by Smith that if he happen to receive the position, he would have to rotate to all jobs and work all shifts. However, as stated above, Jason Patton works all day shifts and is not required to rotate on other stations.

43.     Plaintiff Bowens' status was change from "ready for promotion" to "not ready for promotion" in September 2013. This change came after many years of Bowens being "ready for promotion." Prior to the change in status, Bowens was training various other team members in Quality Body & Paint as he was the highest senior team member on the "A" shift.

44.     Bowens' status was changed one month before there was to be a promotion for Team Leader, "A" Shift Body & Paint. Phillip Cooper, Caucasian Group Leader, made the change to Bowens' promotional status. Cooper told the plaintiff he was making the change because Bowens needed to take a few prerequisite computer courses to which he could only give Bowens access.     After this conversation with Bowens, Cooper gave the clearance for the computer courses to three Caucasian female candidates in December 2013 but never gave Bowens access/clearance. To date, Bowens still has not been given access or clearance for the computer courses that he has been told he needed by Cooper.

45.     On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over

the African-Americans.

46.     In the CMM Lab, there are only four African-American employees in that department and twenty Caucasians. One of the African-American employees in the department was just moved in there after the EEOC charge(s) were filed. Specifically, this African-American employee was moved within the last thirty days. Plaintiff Bowens has formally interviewed, by all Caucasian Managers, twice for this department, in approximately 2008 and 2009, and was told he did not have blueprint experience. However, Bowens has talked with Caucasians in the department who did not have blueprint experience prior to be promoted/transferred into the CMM Lab. Furthermore, these Caucasians employees had only worked in the paint shop prior to being promoted to the CMM Lab. Bowens continuously has been interested in this department.

47.     In Quality Body & Paint and other areas of the plant, Caucasians are being promoted to Team Leader without going to the required Team Leader Assessment. Caucasians are also being promoted to Group Leader/Supervisor positions without pre-assessment training. Specifically, Sherry Wilson and Kevin McCurley, Caucasians, have been promoted without the required training/assessment.

48.     The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less

17

qualified, less senior Caucasians into positions for which African-American employees should be receiving.

49.     Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

### *BOBBIE BILLINGSLEY*

50.     Plaintiff Bobbie Billingsley was hired by the defendant on October 25, 2004. Plaintiff B. Billingsley is currently working in production in the Paint Shop. During her employment, B. Billingsley has performed her duties and fulfilled her responsibilities in a satisfactory manner. B. Billingsley has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, B. Billingsley has suffered extreme harm.

51.     Plaintiff B. Billingsley has been denied promotions. In 2011, a Team Leader position was posted. Plaintiff B. Billingsley applied and was qualified for the position; however, was not selected. Plaintiff B. Billingsley was a level 4 able to

train, which was a qualification for the position. Jeremy Miller and Tim Smith, both Caucasian, were awarded the Team Leader positions.

52.    In January 2013, a position in System Skills was available. Said position was posted. Plaintiff B. Billingsley was tested on skills; however, never received a score but was told she did not get the job. Willard Cox, Caucasian, did not have the required qualifications and had no knowledge of the position; however, was awarded the position. Tim Smith and Jodie Pinion, both Caucasian, made the selection decision of Willard Cox.

53.    In January/February 2014, there was a MPS position available and posted. The plaintiff B. Billingsley was a level 4, had CI training and had taken the Team Leader Assessment successfully. However, she was told by her then Group Leader, Toby Hicks and HR Representative O.J. that she was the only one on the list was who was fully qualified. The plaintiff B. Billingsley was not chosen for the job. Tim Smith, Caucasian, made the selection decision and did not give the position to the plaintiff. Plaintiff B. Billingsley was told by the Medical HR representative, Jeff Burbanks, that because she had a tear in her left shoulder she would not be moved/transferred/promoted from her present position unless her doctor removed her restrictions or she quit.

54.    Plaintiff B. Billingsley is aware of the following Caucasians being given

19

promotions: Karen Walker was given a Team Leader position without completing the team leader assessment. Plaintiff B. Billingsley was qualified to fill the Team Leader position. Amy Herring was given a Team Leader position without completing the team leader assessment. Plaintiff B. Billingsley was qualified to fill the Team Leader position. Jeremy Miller was sent to China along with his wife to keep from being forced to leave in 2009. Miller remained in China until all cuts were made. He was brought back and put on the CI team and remained there for 2 years. Miller then was put on the Pilot Team for a year and then he went to MPS and then made a Team Leader. African-Americans are/were not allowed to be trained or make lateral moves like Miller did.

55. On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.

56. African-Americans were not afforded the same training as Caucasians and positions are/were not posted at the plant for African-Americans to be aware of vacancies.

57. Plaintiff B. Billingsley was told by Danny Stamps and Kevin McCurley, both Caucasians, that she had to come and literally beg to train for a Team Leader position. Before she had the chance to train, she was denied each year on her yearly

20

evaluation even though she is a level 4 able to train and active in every area of improving the work areas.

58.     Plaintiff B. Billingsley's yearly evaluations show that she has completed the satisfactory process but she is continually denied promotions by Group Leader, Danny Stamps in October 2012 and Group Leader, Kevin McCurley in October 2013. The defendant allows the Group Leaders to select whoever they want to for promotions.

59.     More Caucasians are being promoted to the salary jobs over African-Americans who have more experience and seniority. In the Paint Shop, Tim Smith, Caucasian, makes the promotional decisions. The defendant does not interfere with Smith's decisions even though he is selecting inexperienced people because they are Caucasian.   Specifically, Brian Avery, African-American, has worked for the defendant for 15+ years and has been denied promotions to Group Leader. Caucasian team members that Avery has trained, with less seniority, have been promoted over him.

60.     Plaintiff B. Billingsley has worked in the paint shop during her employment with defendant. She has put in for training for certain jobs and been denied. However, Caucasians, who were hired after her, were allowed to take the training.

21

61.     A team member, Ann Oliver, who works with plaintiff B. Billingsley, has a tear in her shoulder like the plaintiff. Ms. Oliver asked to be moved from the area so there would not be anymore damage to her shoulder. Defendant has moved Ms. Oliver twice to accommodate her shoulder injury. However, when the plaintiff B. Billingsley asked to move from her current area, she was told that they did not have anywhere else to move the plaintiff. Plaintiff B. Billingsley has also been told she will not be promoted due to her shoulder injury, which occurred on the job.

62.     Other examples of race discrimination in promotions are: (1) Kevin McCurley, Caucasian, was moved from Group Leader to Team Leader because he could not keep up on the line. Later on, McCurley was promoted back to Group Leader because he could not work the stations in his area. Plaintiff B. Billingsley is/was qualified for the Team Leader and Group Leader positions awarded to McCurley. (2) Theresa Pierson, Caucasian, was promoted to Team Leader because she was getting too much negative feedback from her work online, even though she did not have the experience to be a Team Leader. Plaintiff B. Billingsley is/was qualified for the Team Leader and Group Leader position awarded to Pierson. (3) Ronnie Jordan, Caucasian, who worked in the same area as plaintiff, stepped away from his job in the system because he did not like working on Sundays. Jordan also had been moved to Assembly but he could not keep up, so the defendant sent him

22

back to Paint Shop and they put him in the Wax Area when the booth was being manned at the time. Jordan started complaining because he could not keep up with the line speed. He went to Tim Smith, Caucasian, and asked to be moved back to the system, which is an off line job. Plaintiff B. Billingsley has repeatedly requested to be moved to an offline job but has been continually denied by the defendant.

## CARL BILLINGSLEY

63.    Plaintiff Carl Billingsley was hired by the defendant on November 1, 2004. Plaintiff C. Billingsley is currently working as a E-Coat Operator. During his employment, C. Billingsley has performed his duties and fulfilled his responsibilities in a satisfactory manner. C. Billingsley has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, C. Billingsley has suffered extreme harm.

64.    In 2013 or 2014, E-Coat Sanding or Top Coat position was available. C. Billingsley was interested and qualified for the position; however, Mike McRee, Caucasian, received the position.

65.    In 2013-2014, the Pilot Team was going to be selected. Interested

persons were told to attend a meeting and everyone would be given an interview. However, Plaintiff C. Billingsley did not receive an interview. C. Billingsley was qualified for the Pilot Team.

66.    Team Leaders positions were available in 2013-2014. Plaintiff C. Billingsley was "ready" for promotion on his evaluation in 2012. However, in 2013, his status was changed to "not ready" by Danny Stamps, Caucasian. Stamps told the plaintiff it was because he was behind in all his jobs. Plaintiff denies he was behind in all his jobs. Plaintiff C. Billingsley is a level 4 - able to train. C. Billingsley believes his promotion status was changed in order for him not to be qualified for Team Leader positions.

67.    Plaintiff C. Billingsley has been denied promotional opportunities to the positions of Pilot Team and Team Leader.

68.    On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.

69.    Plaintiff C. Billingsley was marked "ready" for promotion on his evaluation prior to the mass expansion. In 2013, C. Billingsley's status was changed to "not ready" for promotion. When C. Billingsley inquired as to why his status was changed, he was told that he was behind on his processes. However, Plaintiff C.

24

Billingsley's is a level 4 in all processes that he performs, which makes him qualified to train new hires, which he has been doing prior to his status change.

70.     Plaintiff C. Billingsley has spoken to Danny Stamps, Caucasian Group Leader, about how he chooses his Caucasian buddies when it comes to overtime, weekend and holiday work.  However, Stamps has done nothing to remedy the situation and does not make overtime, weekend and/or holiday work known to African-American employees.

71.     There have been many Caucasian employees with less seniority, less experience but yet surpassed the plaintiff in growth and promotional opportunities.

72.     The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American employees should be receiving.

73.     Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

## *JOSEPH BROOKS*

74.     Plaintiff Joseph Brooks was hired by the defendant on September 5,

25

2005 as a production team member and currently holds that position. During his employment, Brooks has performed his duties and fulfilled his responsibilities in a satisfactory manner. Brooks has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, Brooks has suffered extreme harm.

75.     In September 2012, Plaintiff Brooks was evaluated by his Group Leader, Danny Stamps, Caucasian. Plaintiff Brooks received "satisfactory" on all areas of his evaluation. However, he was marked "not ready" for promotion by Stamps because "he did not talk on the radio enough, did not talk to the Team Leader, Mike Groove, enough and did not have enough input on things that are done in the area." Stamps also told Brooks as long was he (Stamps) was the Group Leader over the Sealer/Wax Area, Brooks would not be promoted to a Team Leader. However, Brooks filled in for the Team Leader if he was off and did all the job duties and responsibilities associated with the position of Team Leader.

76.     Again, in September 2013, Plaintiff Brooks was evaluated. Brooks again received all "satisfactory" marks on the evaluation; however, was marked as "not ready" for promotion by his Group Leader, Kevin McCurley, Caucasian. Brooks was

qualified to be promoted to the position of Team Leader.

77.    Some of the positions Plaintiff Brooks has been interested in and qualified to fill are: (1) SKD (transporting body outside to be loaded on tractor trailers; (2) Quality; (3) Material Handling - Brooks applied two different times (2012 and September 16, 2014); (4) Team Leader (Brooks applied in May of 2014); (5) P04 E-Coat System (Brooks applied in November/December 2014); (5) System Skill Repair (Brooks applied on November 20,2 014); and (6) Parts person on C-Shift in E-Coat (position not posted but given to a Caucasian with less experience and seniority. Plaintiff Brooks was specifically told by the Paint Shop Manager that he did not have to post jobs.

78.    Defendant will not adequately explain processes to the African-American employees as they do the Caucasians.  If management is showing Caucasians how to do something or a process and an African-American walks up to listen, the manager will laugh and stop explaining.  Management will also show the African-American employees the longer and harder way of doing processes at the plant.

79.    The Group Leaders in the Paint Shop would let Caucasian team members with less seniority fill-in and train as Team Leaders by taking them off-line before more senior African-Americans. Group Leaders did this in order to say the Caucasian

27

team members had experience and were more qualified for a Team Leader position when a vacancy occurred. Specifically, some of the less senior, less qualified Caucasians promoted over African-Americans are/were:

- Jeremy Miller, promoted to Team Leader and Group Leader;
- Nate Long, promoted to Team Leader;
- Scott Sutton, promoted to Team Leader;
- Karen Walker, promoted to Team Leader;
- Michael Krueger, promoted to Team Leader and Group Leader;
- Amy Herring, promoted to Team Leader.

80.   On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.

81.   The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American employees should be receiving.

82.   Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

## *ZONABIA M. BURNS*

83.   Plaintiff Zonabia M. Burns was hired by the defendant on March 26,

2001 in Quality and currently holds this position. During her employment, Burns has performed her duties and fulfilled her responsibilities in a satisfactory manner. Burns has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, Burns has suffered extreme harm.

84.    In July 2010, everyone in Plant 1 was moved to Plant 2. The plaintiff Burns was assigned to Trim 1 and stayed over there until April 2014. Plaintiff got a job in Off-line Quality at the end of April 2014. Plaintiff Burns' Group Leader is Mike Madison. In this department, HR, Emerson Gore, always sides with Madison if anything happens in the department.

85.    The Group Leader Madison discriminatorily disciplines Plaintiff Burns based on what he hears from Caucasian workers. Plaintiff Burns works overtime and is continually questioned by Madison because a Caucasian team member, Kathy Hollingsworth, looks at the plaintiff's overtime sign in sheets and reports back to Madison.

86.    Hollingsworth curses at the plaintiff Burns and then Group Leader Madison disciplines Plaintiff Burns for the incident.

87.     Plaintiff Burns is also qualified for Team Leader positions; however, has not been awarded said position.

88.     On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.

89.     The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American employees should be receiving.

90.     Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

### *KELVIN DIAL*

91.     Plaintiff Kelvin Dial was hired by the defendant on October 10, 2015 and currently holds the position of P04 Operator. During his employment, Dial has performed his duties and fulfilled his responsibilities in a satisfactory manner. Dial has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment

opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, Dial has suffered extreme harm.

92.    In October 2013, Plaintiff Dial was evaluated by his Group Leader, Kevin McCurley, Caucasian. McCurley wrote on Plaintiff Dial's evaluation that he thought plaintiff "was not ready" for a promotion to Team Leader. McCurley's reason was "sometimes you can be a model worker, be on time, keep your nose clean by staying out of trouble, but in this case, that is not enough." McCurley went on the tell the plaintiff that he did not talk on the radio enough and that plaintiff needed to find ways to cut work processes back and report them to him (McCurley) or the C.I. Team. Plaintiff disagreed with this evaluation as the only time he had access to a radio was when he worked in Demask. There had to be a breakdown or running out of cars and parts in order for the plaintiff to use the radio at Demask and, at that time, the plaintiff did use the radio.

93.    Caucasian team members with less seniority have been promoted to a Team Leader position in which Plaintiff Dial has been interested in filling. Several of the Caucasian team members have less than one year of full service with the defendant, never talked on the radio, never improved a process nor been on C.I. or pilot team like the plaintiff Dial and other African-American employees were told

31

they had to do before becoming a Team Leader.

94.    The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American employees should be receiving.

95.    No nomination sheets for Team Leader were posted but Craig Rosetta and Jeremy Miller, Caucasians, got Team Leader positions without job postings.

96.    Greg Atkins, Caucasian, did/does not train African-Americans, specifically Carlos Smith and James Womack, for Operator positions like he trains Caucasian employees, specifically Kevin Keith.

97.    Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

### *JAMES L. ECHOLS, JR.*

98.    Plaintiff James L. Echols, Jr. was hired by the defendant on August 4, 1997 and currently holds the position of Team Member in Phosphate/E-Coat System. During his employment, Echols has performed his duties and fulfilled his responsibilities in a satisfactory manner. Echols has been adversely affected by the

32

challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, Echols has suffered extreme harm.

99. In April and May 2014, a Team Leader position was posted for Phosphate/E-Coat System. Plaintiff Echols was the Team Leader of this same system at Paint 1 before it was shutdown and everybody had to go to Paint 2. The plaintiff could not keep his position as Team Leader once everyone moved to Paint 2. Plaintiff Echols was not selected for the April/May 2014 Team Leader position. Mike Cargile, Caucasian, with less seniority and skill set was selected. Furthermore, Cargile has received several disciplinary actions, whereas the plaintiff has not. The Group Leaders and Assistant Managers, all Caucasians, make/made the selection decisions.

100. Plaintiff Echols has experienced during his employment discrimination in promotions. The Caucasian Group Leaders/Managers, change the system in place so they can promote the Caucasian employees they want in particular positions.

101. All of Plaintiff Echols' evaluations - 17 years - has him marked as "ready" for promotion; however, he has not been promoted back into a Team Leader

33

position due to the "good ole boy" system in effect at the defendant's Plant.

102.   In the Paint 2 department, Caucasian managers will tell the Caucasian team members about positions becoming available for them to apply.  Once the Caucasian employees apply, they receive the positions.  Plaintiff Echols is only offered positions that nobody wants and is not a Team Leader position.

103.   Promotional decisions in the department(s) where Plaintiff Echols worked/works are all Caucasian - Tim Smith (Shop Manager, Senior); Danny Stamps (Assistant Manager); Gary Wheeler (Assistant Manager); Jody Pinion (Assistant Manager); and Toby Hicks (Group Leader).

104.   On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.

105.   Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

### *DORIS FOSTER*

106.   Plaintiff Doris Foster was hired by the defendant on June 2, 1997 and currently holds the position of Quality on Line - Team Member.  During her

34

employment, Foster has performed her duties and fulfilled her responsibilities in a satisfactory manner. Foster has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, Foster has suffered extreme harm.

107. In 2011 and 2012, the plaintiff Foster was given a "not ready" for promotion on her evaluation which disqualifies her from receiving any promotions. Plaintiff's evaluations were performed by Konnie Harbinson and Tim Smith, both Caucasians. Throughout the year, Foster was always told she was doing a good job; however, when given a "not ready" for promotion on her evaluations, she was told she was not performing well. Plaintiff disputed this fact and there were no documentation to back-up the allegations regarding plaintiff's work.

108. In October 2014, there was a Group Leader position posted and Plaintiff Foster was interested and applied for said position. Plaintiff Foster had all the qualifications required for the position; however, was not selected. Gene Upton, Caucasian, was selected.

109. On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over

35

the African-Americans.

110.   The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American employees should be receiving.

111.   Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

## *PHIL GENTRY*

112.   Plaintiff Phil Gentry has been employed with the defendant for over 8 years. Gentry started working for the defendant in 2005. Gentry began working in the paint shop and still works in that department presently. During his employment, Gentry has performed his duties and fulfilled his responsibilities in a satisfactory manner. Gentry has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, Gentry has suffered extreme harm.

113.   When a job is posted and you receive said position, the person is to progress in that position and remain in the position for at least a year. However, there was a job posting for the C.I. Team (Continuous Improvement). The plaintiff worked on the job for only 6 months and then was sent back to the line in E-Coat Sanding. Plaintiff Gentry was not given the full year term that Caucasians are given.

114.   Gentry continues to seek promotions to Spot Repair, Robot Operator, Major Repair and Parts Carrier for the E-Coat Phosphate Team. However, these positions are awarded to less senior and less qualified Caucasians. Gentry has also witnessed Caucasians receiving positions/promotions in which there were never postings.

115.   Gentry applied for a job on the 205/292 plant project team. Plaintiff Gentry received the job. The job was for a 2-year period for the 292 project. The plaintiff was on the project team 205/292 for only 6 months and was sent back to E-Coat Sand.

116.   The Paint Shop posted a 292 project sign-up sheet during the week of October 13, 2014. A trainer from Germany came to show the employees the new sealer process. Out of all the employees trained, the plaintiff was considered the best by the German trainer and he wanted the plaintiff to train team members when he was not available. However, the plaintiff did not get the chance to train anyone.

37

117.   On the evening of October 13, 2014, the team started the new sealer process. There was no group leader involvement nor was the group leader checking to see if the process was being done right. The plaintiff did the process on October 16, 2014 and, even though the plaintiff did the process better than anyone else and was able to train team members, the Caucasian Group Leader still checked every one of the cars that the plaintiff processed. At the present time, the plaintiff has more experience than any other team member on the line.

118.   At the end of 2014, the plaintiff applied for a Team Leader position in E-Coal Sand. The plaintiff had more experience and time than any other team member applying. Gentry did not even get an interview. A team member, Kathy Wright, Caucasian, was awarded the position. Wright had only been employed for two years at the time she received the position.

119.   Plaintiff recently took a job in the E-Coal Phosphate System as an Operator. Danny Stamps has made comments to Plaintiff Gentry that this is the job he needs to work until he retires. Plaintiff Gentry feels these comments are being made to discourage him from seeking promotions and feels he has no opportunity to advance.

120.   On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over

the African-Americans.

121.   Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

### *MICHAEL G. GROVE*

122.   Plaintiff Michael G. Grove was hired by the defendant on March 3, 1997 currently holds the position of Team Leader. During his employment, Grove has performed his duties and fulfilled his responsibilities in a satisfactory manner. Grove has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, Grove has suffered extreme harm.

123.   In January 2014, a position of Mix Room Operator was posted. Plaintiff was interested in said position; however, was not selected for the position. Bob Avery and Tony Fondra, both Caucasians, were selected for the position. Avery and Fondra were holding the position before the position was posted. After other team members complained to HR, the posting was available for the Mix Room Operator.

However, the two Caucasians already holding the position were awarded the position. The selection was made Caucasians, Tim Smith, Gary Wheeler and Danny Stamps.

124.   African-American Operators were/are not given the proper training for the position of Robot Operator because the Caucasian trainers feel the African-Americans did not deserve the position and/or they were not smart enough to learn the job. African-American Operators are usually shown the procedure(s) only a few time by the trainers.  However, the Caucasian Operators are/were given all the chances they needed to learn the procedures for the position.

125.   Plaintiff Grove's promotion status was changed by Danny Stamps and Kevin McCurley, Caucasian.  Plaintiff Grove, prior to his evaluation, was never told of any deficiencies in his job performance.  Changing Grove's promotion status makes him not promotable to the higher position of Group Leader, which Grove is qualified to hold.

126.   On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.  Specifically, Jeremy Miller, who was at one time 26th on the seniority list, was selected as a Team Leader.  Miller was then later promoted to Group Leader.  Each time he was promoted (Team Leader and then Group Leader), there were African-American team members who were qualified and higher on the

seniority list.

127.   Nate Long, Caucasian, was a Team Leader in Paint.  Long was given the guide to study for the Group Leader Exam.  He was allowed to study during production hours.  African-Americans are not given the study material even when they ask for it.

128.   The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American employees should be receiving.

129.   Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

### *ROBERT GLOVER, JR.*

130.   Plaintiff Robert Glover, Jr. was hired by the defendant on November 7, 2005 and currently works in Logistics.  During his employment, Glover has performed his duties and fulfilled his responsibilities in a satisfactory manner. Glover has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment

opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, Glover has suffered extreme harm. Plaintiff Glover has continually sought promotions from 2008 to the present.

131.   In 2012, a First Responder position was available; however, there was no posting for the job. The training for the position was given by German Engineers and Maintenance. Plaintiff Glover was not selected for the position even though he had trained the person selected for the position. Ronald Tittle, Caucasian, was selected for the position. Again, in 2012, a First Responder position became available and the position was not posted. Plaintiff was not selected; however, he trained the person selection - Chet Bostick, Caucasian. When the plaintiff asked the Group Leader why the Caucasians had received the First Responder positions, he was told it was based on seniority. Plaintiff had more seniority than the individuals receiving the positions. Plaintiff was qualified to hold the position of First Responder.

132.   In 2012, a Team Leader position was available and position was not posted. Zyndal Wilkins, Caucasian, was selected for the position. The plaintiff was qualified for the Team Leader position as he had supervisory experience and had his certificate for Team Leader Assessment (2006).

133.   Right before the Team Leader position became available in 2012, Plaintiff Glover's status was changed from "ready" to "not ready" for promotion. Glover was told his status was changed because he had been written up for a trainee missing part of a process. Just after Glover received said write-up, a less qualified Caucasian team member was appointed to the Team Leader position. Glover was qualified to hold the Team Leader position.

134.   A Caucasian female, Renee Albrook, was promoted to Team Leader (approximately 2010) even though a position was not available nor was a job position posted. An African-American Team Leader, Willie Jones, was moved to Quality to open up this position for Albrook. Ms. Albrook did not even know how to read a broadcast sheet, which is very critical at the plant.

135.   Philip Hunt, Caucasian, was promoted to Team Leader (in 2014) over several African-American team members with several years seniority. Mr. Hunt had only bee hired a few months prior to this promotion.

136.   On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.

137.   The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less

qualified, less senior Caucasians into positions for which African-American employees should be receiving.

138.   Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

### *CURTIS C. GRAVES*

139.   Plaintiff Curtis C. Graves was hired by the defendant on July 7, 1996 and currently holds the position of Group Leader.  Graves has held this position for over ten years.  During his employment, Graves has performed his duties and fulfilled his responsibilities in a satisfactory manner.  Graves has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment.  As a result of such discriminatory actions, Graves has suffered extreme harm.

140.   Plaintiff Graves has sought a promotion, since 2010 to the present, for the position of Manager.  This job was never posted and no African-Americans were given the opportunity to put in, train or attempt to be "groomed" for the position.

Even though Plaintiff Graves, as a Group Leader, was qualified for the Manager position, Caucasians were given the opportunity for the position. Specifically, Jody Pinion and Danny Stamps. These individuals were "groomed" for the job, given the test that was needed, given the exposure and allowed to work in favored areas of the plant. These opportunities were given to them by Sr. Manager Tim Smith, Caucasian.

141.  Caucasians who were allowed to take classes, tests, and preparation for the next level of management at the plant are Kevin McCurley, Robin Sims, Danny Stamps and Jody Pinion. On information and belief, African-Americans are held accountable and held to a different standard than Caucasians at the plant.

142.  On information and belief, since Tim Smith, Caucasian Sr. Manager, has been over the Paint Shop, he has not promoted an African-American in the Paint Shop.

143.  However, since the filing of EEOC charges and complaints alleging race discrimination in promotions, the defendant has promoted approximately 4 African-American employees in October-December 2014 without following its own policies and procedures and time tables for promotions.

144.  In 2008, 2009 and 2010, Plaintiff Graves' evaluations were dropped from "excellent" to "successful" so that when the opportunity of promotion to Manager became available, he would not qualify.

145. On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.

146. The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American employees should be receiving.

147. Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

### *RAYFUS GRANT*

148. Plaintiff Rayfus Grant was hired by the defendant on March 19, 2001 as a Team Member. Grant became a Team Leader in 2005. During his employment, Grant has performed his duties and fulfilled his responsibilities in a satisfactory manner. Grant has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a

result of such discriminatory actions, Grant has suffered extreme harm.

149.   After being a Team Leader for approximately four years, Plaintiff Grant was qualified for the position of Group Leader.  In November 2009, Grant was denied a promotion to the position of Group Leader.  A Caucasian co-worker, Case Cook, with less experience and seniority was awarded the Group Leader position.

150.   On August 18, 2010, another Caucasian co-worker with less experience and seniority was awarded a Group Leader position.

151.   Continuously since November 2009 until October 2014, the plaintiff Grant has been denied a promotion to Group Leader in the Body Shop.  Within the past five years, approximately 13 Group Leader positions have been filled with Caucasian employees. In 2014 specifically, 7 Group Leader positions were available and filled with Caucasian employees.  Plaintiff Grant and several other African-American employees were qualified for the Group Leader positions filled; however, were denied the promotions.

152.   On information and information, within the Body Shop there are 23 Group Leader positions. Only one (1) African-American (Demitris Coleman) has ever been promoted to a Group Leader position in the Body Shop.

153.   Some of the Group Leader positions were posted, some were not.  Some of the Caucasians receiving the Group Leader promotions are Pam Marcus, Mike

Winstom, Chuck Pown, Joe Glasco, Casc Bearding, Frank Rodiquez, Kevin Alexander, Darrly Mayson, Donal Wikines, Jason Grimes, Stay Cantrary, Lara Waygood, Rusty Jones, and Brian Whitaker.

154.  The defendant requires that all employees seeking a Group Leader position have to take the group leader training/class before being considered. However, some of the Caucasians awarded the Group Leader positions did not even take the class/training.

155.  In 2012, African-American Team Leaders were told if you were in the "ready" status to be promoted to Group Leader, your status would be placed in the "not ready" status. On information and belief, this status change was done so that the defendant could select the less qualified, less senior Caucasians for the Group Leader positions.

156.  On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.

157.  The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American employees should be receiving.

158.   Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

### *TYMECCA LEE*

159.   Plaintiff Tymecca Lee Grant was hired by the defendant on July 25, 2005 as a Team Member. Lee currently holds the position of Team Leader. During her employment, Lee has performed her duties and fulfilled her responsibilities in a satisfactory manner. Lee has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, Lee has suffered extreme harm.

160.   Lee has sought to be promoted to the position of Team Leader in the Paint 2 Sealer area/department. However, a less senior Caucasian, Jeremy Miller, received the position over Plaintiff Lee.

161.   In October 2013, Plaintiff Lee was chosen to be on the Pilot Team with the defendant. She was told she was to be on the team for awhile before she could become a Team Leader in another area. This was the first time Plaintiff Lee had

heard of this being done this way at the plant. Lee feels it is a way to keep her from becoming a Team Leader in other areas when vacancies occur.

162.   On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.

163.   The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American employees should be receiving.

164.   Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

### *TERRY NIXON*

165.   Plaintiff Terry Nixon was hired by the defendant on May 29, 2001 and currently holds the position of Team Member in Quality. During his employment, Nixon has performed his duties and fulfilled his responsibilities in a satisfactory manner. Smith has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for

employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, Nixon has suffered extreme harm.

166.   Plaintiff Nixon has sought promotions to both Team Leader and Group Leader position since 2004 to the present.

167.   Every Group Leader position that Plaintiff Nixon has applied for his 2010, except one, has been awarded to Caucasian employees. Plaintiff Nixon cannot, at this time, recall the names of each and every Caucasian employee receiving the Group Leader positions since 2010.

168.   Before the Group Leader test was implemented at the Plant, Plaintiff Nixon was "ready" for promotion. However, when the test was implemented, the plaintiff was taken from the "ready" to promote list. This action has not allowed the Plaintiff Nixon to "be ready" for promotions.

169.   All the positions for Group Leader positions in the Body Shop have been awarded to Caucasian employees except one. Specifically, there have been 8 Group Leader promotions in the Body Shop in the last 18 months and none of the selectees have been African-Americans.

170.   On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over

the African-Americans.

171.   The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American employees should be receiving.

172.   Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

### *CARLOS SMITH*

173.   Plaintiff Carlos Smith was hired by the defendant on September 5, 2005 and currently holds the position of Team Leader.  During his employment, Smith has performed his duties and fulfilled his responsibilities in a satisfactory manner.  Smith has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment.  As a result of such discriminatory actions, Smith has suffered extreme harm.

174.   Prior to becoming a Team Leader, Plaintiff Smith was overlooked for a

Team Leader position that was awarded to Jeremy Miller, Caucasian. Miller was less qualified and had less seniority than Plaintiff Smith.

175.   Plaintiff Smith was given a Robot Operator job in which he was not properly trained. Greg Adkins was the trainer. Mr. Adkins would show favoritism in training by giving the Caucasian, Kevin Keef, more training than Smith. Plaintiff Smith complained about the lack of training by Mr. Adkins; however, nothing was ever done to correct the problem.

176.   Plaintiff Smith is currently a Team Leader over UBS area and Demask. However, as a Team Leader, he was told he could not come in and work on Sundays in his area. The defendant allows a Caucasian team member in that area to work the overtime on Sundays.

177.   Plaintiff Smith has been interested in Group Leader positions; however, Caucasians are selected for Group Leader vacancies/positions.

178.   On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.

179.   The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American

employees should be receiving.

180.   Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

### *DORENE THORNTON*

181.   Plaintiff Dorene Thornton was hired by the defendant on June 2, 1997 and is currently holding the position of Team Leader.  During her employment, Thornton has performed her duties and fulfilled her responsibilities in a satisfactory manner.  Thornton has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment.  As a result of such discriminatory actions, Thornton has suffered extreme harm.

182.   Plaintiff Thornton has sought promotions to the position of Group Leader from June 2013 through 2014.

183.   Plaintiff Thornton was given a "not ready" on her yearly reviews so she could not self-nominate for promotions in 2013-present. The person that makes the decisions on promotions is Tim Smith, Sr. Manager, Caucasian.

184.   All of Plaintiff Thornton's years as a Team Leader, she has always been "ready" to promote.  However, in 2013, she was given a "not ready" to promote because she had not taken the group leader assessment.  This particular year, the promotion process was underway because the paint shop was going to three shifts. So that put the plaintiff in the category where she could not self-nominate for promotion to Group Leader.   Thornton's review was given by Chris Young, Caucasian. It was signed by HR along with Mark Selby, African-American A/M, and Tim Smith, Caucasian Sr. Manager.  Tim Smith handpicks the Group Leaders he wants to promote. After Plaintiff Thornton complained to HR about her review, HR changed her to "ready."  However, by that time, Tim Smith had already chosen the Team Leaders (Caucasians) to promote.

185.   In 2012, a painter program was established to train team members who expressed a desire to learn how to paint. A Team Leader, Patrick Davis, Caucasian, was chosen by Tim Smith to oversee all training. This program was to prepare for the three shift operation that paint was going to. All interested team members who signed up was given the opportunity to train in the paint process, with the exception of Plaintiff Bobbie Billingsley, African-American.  She was told by medical and Tim Smith that she could not enter the program because of her medical restrictions.  Then again, several years ago, Billingsley was passed over to train in painting.  At that

time, it was done by seniority and team members with less seniority learned how to paint, i.e., Mike Hopkins, Dan Stringer, Rick Spiller and James McGill, all Caucasians. To date, the defendant has not allowed Plaintiff Billingsley the opportunity to train in painting.

186.   When Plaintiff Thornton came back from MPS, an African-American Doris Pierce was next in line to go.  The MPS pool is where Group Leaders were chosen from at that time.  Tim Smith chose Woodie Krueger, Caucasian Team Leader, to go next. Krueger did not have the seniority to go next.  Ms. Pierce had to fight the decision and won.  Pierce did a year on MPS and Woodie Krueger went next. However, either Pierce of Plaintiff Thornton were promoted after their tour on MPS.  Woodie Krueger was promoted and now he is a Group Leader over Paint Quality.  Pierce and Plaintiff Thornton were more qualified than Krueger.

187.   Plaintiff Thornton received her painter's certificate in 1999.  She went through a formal course at BASF in Atlanta.  After her promotion to Team Leader, the plaintiff was selected to the C.I. Team.  This team is designed to enhance the duties as a Team Leader.  Plaintiff Thornton spent a year on this project.  She was then selected to the MPS Team.  This team is designed to prepare a person for the Group Leader position.  Again, the plaintiff spent a year on this team.  At the time, Patrick Swhind (German) was the paint shop manager.  When Thornton's year was

up, Swhind had left the department and went to China. The Administrative Assistant, at that time, was Pat Pinto, Caucasian, who showed the plaintiff on the manpower matrix that she was next in line to be promoted to Group Leader. The matrix showed Thornton as the Group Leader over the C.I. Team. So when she returned to the paint shop, Tim Smith, Caucasian, was the Manager. The plaintiff was put back on the line as the Team Leader on the Polish Line. The plaintiff was not selected as Group Leader over C.I. The plaintiff was qualified for the position even though she was not selected.

188.   On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.

189.   The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American employees should be receiving.

190.   Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

## *CHRISTOPHER WHITTED*

191.   Plaintiff Christopher Whitted was hired by the defendant in July 1997 and is currently holding the position of Quality Team Leader.   During his employment, Whitted has performed his duties and fulfilled his responsibilities in a satisfactory manner.  Whitted has been adversely affected by the challenged systemic practices and pattern of racial discrimination by not being able to learn about or compete for employment opportunities in traditionally Caucasian job classifications; by being required to work under discriminatory terms and conditions of employment. As a result of such discriminatory actions, Whitted has suffered extreme harm.

192.   Plaintiff Whitted has sought promotions to the position of Group Leader from 2013 to the present.

193.   Plaintiff Whitted has been a Team Leader for over 14 years.  In the past ten years, Whitted has filled in as Group Leader on numerous occasions.  He has filled in as Group Leader for more than a month at a time for at least four different Group Leaders.  Whitted is currently the "go to person" on the night shift, which is equivalent to the Group Leader duties and responsibilities.  Whitted has worked as Quality Team Leader in Body & Paint (12 1/2 years) and Assembly (5 years). Therefore, Whitted has plenty of experience in every shop that they have in the plant.

194.   Recently, there was a job opening for a Group Leader position.  Whitted

applied for said position. Whitted was not selected. The position was given to Woody Krueger, Caucasian, who not only did not work in Quality but had no experience in the area. Krueger did not possess the experience or knowledge to run the Quality Group productively or effectively.

195. On information and belief, Whitted believes the Profile XT that is used at the defendant to profile employees for promotions is discriminatory.

196. On information and belief, African-Americans with more seniority are required to train Caucasian team members and then the Caucasians are promoted over the African-Americans.

197. The discriminatory practice of changing African-American employees promotion status from "ready" to "not ready" allows MBUSI to promote less qualified, less senior Caucasians into positions for which African-American employees should be receiving.

198. Some of the positions in which African-American employees are not promoted into include, but are not limited to, Team Leader, Group Leader, CMM Lab, Quality Specialist, Robot Operator, Paint Repair, A/M Manager, First Responder.

## H.   *CLASS CLAIMS AGAINST MBUSI*

### DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000(e), *et seq.*, AS AMENDED, AND THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. §1981, AS AMENDED
### CLAIMS FOR DECLARATORY, INJUNCTIVE, AND OTHER EQUITABLE RELIEF

199.   The named plaintiffs restate and incorporate by reference Paragraphs 1 through 198 above as part of this Count of the Complaint against MBUSI.

200.   Plaintiffs and the class they seek to represent have been subject to systemic racial discrimination including, but not limited to, a pattern and practice of intentional discrimination and a battery of practices having unlawful disparate impact on their employment opportunities.  The challenged racial discrimination includes a policy and practice of restricting African-Americans' employment opportunities to the lower classification and compensation levels.   The systemic means of accomplishing such racial discrimination include, but are not limited to, MBUSI's filing to post all job openings/vacancies, selecting less qualified Caucasian employees for said vacancies/openings.

201.   Such selection and compensation procedures incorporate the following racially discriminatory practices: 1) reliance upon subjective procedures and criteria which permit and encourage the incorporation of racial stereotypes and bias of a predominantly Caucasian managerial staff; 2) refusal to establish or follow policies,

procedures, or criteria that reduce or eliminate disparate impact and/or intentional racial bias or stereotypes in decisionmaking; 3) refusal to post or announce vacancies or employment opportunities in a manner that allows African-Americans to learn about such opportunities and compete for them before they are filled by Caucasian employees or applicants; 4) pre-selection of Caucasians before vacancies or opportunities become known; and 5) discouragement of applications and expressions of interest by African-Americans through a reputation for racial bias, and unequal terms and conditions of employment in such areas as position assignments.

202. MBUSI's selection procedures have a disparate impact on the Plaintiffs and the class they seek to represent regarding claims arising at the Vance, Alabama. Such procedures are not valid, job related or justified by business necessity. There are objective and structured selection procedures available which have less disparate impact on African-Americans and equal or greater validity and job relatedness, but they not been considered.

203. Such selection procedures are intended to have a disparate impact on the Plaintiffs and the class they seek to represent.

204. The Plaintiffs and the class they seek to represent have been adversely affected by such practices in various way, but is not limited to, the following: not hiring or promoting African-Americans in traditionally Caucasian classification and

compensation levels; assigning African-Americans to inferior positions and other unequal terms and conditions of employment.

205.  MBUSI has also continuously engaged in, condoned and ratified discrimination which constitutes a continuing violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, as amended, and 42 U.S.C. §1981, as amended.

206.  The Plaintiffs have no plain, adequate, or complete remedy of law to redress the wrongs alleged herein, and this suit for back-pay, an injunction other equitable relief, and a declaratory judgment is their only means of securing adequate equitable relief.  Plaintiffs are now suffering and will continue to suffer irreparable injury from the challenged policies and practices as set forth herein unless enjoined by this Court.

207.  By reason of MBUSI's discriminatory employment practices, the Plaintiffs have experienced harm, including loss of compensation, back and front pay, and other employment benefits.

## CLAIMS FOR NOMINAL, COMPENSATORY AND PUNITIVE DAMAGES PURSUANT TO 23(B)(3)

208.  The common issues of fact and law affecting the claims of the Plaintiffs and proposed class members, including, but not limited to, the common issues identified in paragraphs 1-198 above, predominate over any issues affecting only

62

individual claims.

209. A class action is superior to other available means for the fair and efficient adjudication of the claims of the Plaintiffs and members of the putative class.

210. The cost of proving MBUSI's pattern or practice of discrimination makes it impracticable for the Plaintiffs and members of the proposed class to prosecute their claims individually.

## VII. PRAYER FOR RELIEF AGAINST MBUSI

211. Wherefore, the Plaintiffs on behalf of themselves and the class members whom they seek to represent request the following relief:

a. Acceptance of jurisdiction of this cause;

b. Certification of the case as a class action maintainable under Federal Rules of Civil Procedure Rule 23 (a) and (b), on behalf of the proposed plaintiff class, and designation of such Plaintiffs as representatives of the class and their counsel of record as class counsel;

c. A declaratory judgment that MBUSI's employment practices challenged herein are illegal and in violation of Title VII and 42 U.S.C. §1981;

d. A temporary and permanent injunction against MBUSI and its partners, officers, owners, agents, successors, employees, representatives and any and all persons acting in concert with it, from engaging in any further

unlawful practices, policies, customs, usages, racial discrimination and retaliation by such defendant set forth herein;

e.   An Order requiring MBUSI to initiate and implement programs that provide (i) equal employment opportunities, specifically promotional opportunities, for African-American employees; (ii) remedy the effect of such Defendant's past and present unlawful employment practices, specifically promotional opportunities; and (iii) eliminate the continuing effects of the discriminatory and retaliatory practices described above;

f.   An Order requiring MBUSI to initiate and implement systems of assigning, training, transferring, compensating, and promoting African-American employees in a non-discriminatory manner;

g.   An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (e) and (f), above, which would provide for (i) the monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (e) and (f), above;

h.   An Order restoring the Plaintiffs and the class they seek to represent to

those jobs they would now be occupying but for MBUSI's discriminatory practices;

i.     An Order directing MBUSI to adjust the wage rates and benefits for the Plaintiffs and the class they seek to represent to the level that they would be enjoying but for such defendant's discriminatory practices;

j.     An award of back pay; front pay; lost job benefits; preferential rights to jobs, and other equitable relief for the Plaintiffs and the class they seek to represent;

k.     An award of nominal, compensatory and punitive damages for all legal relief sought in this complaint.

l.     An award of litigation costs and expenses, including reasonable attorney's fees to the Plaintiffs and class members;

m.     Prejudgment interest; and

n.     Such other and further relief as the Court may deem just and proper.


Respectfully submitted this 12th day of February, 2015.

Respectfully submitted,

Gregory O. Wiggins
Kevin W. Jent
Counsel for the Plaintiffs

OF COUNSEL:

WIGGINS CHILDS PANTAZIS
        FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500
205/254-1500 (fax)

PLAINTIFFS AND THE CLASS THEY SEEK TO REPRESENT
REQUEST A JURY TRIAL ON ALL CLAIMS TRIABLE TO A JURY

OF COUNSEL

**DEFENDANT'S ADDRESS**
To Be Served Via Certified Mail

Mercedes Benz U.S. International, Inc.
1 Mercedes Drive
Vance, Alabama 35490